UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ADAM THOMASON, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | No. 1:25-cv-00261-VMC |
| v. | ) | |
| | ) | District Judge Calvert |
| UNDERDOG SPORTS, LLC, | ) | |
| | ) | |
|     Defendant. | ) | |

---

MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO REMAND

---

Pursuant to 28 U.S.C. § 1447(c), Plaintiff Adam Thomason submits this memorandum in support of his motion to remand.

## INTRODUCTION

Defendant improperly removed this case from state court. As the proponent of federal jurisdiction, Defendant has the burden to show that Mr. Thomason has standing under Article III of the United States Constitution. Defendant cannot do so. The Court must remand the case.

Defendant runs an online gaming platform where people bet real money on the performance of athletes and other contest participants. Georgia's broad antigambling laws prohibit this type of activity.

Knowing that most gamblers will not sue the house, the Georgia General

Assembly authorized "any person" to recover gamblers' losses for the joint use of the plaintiff and the educational fund of the county. Mr. Thomason sued Defendant under this statute. He did not lose any money to Defendant. His convictions tell him that gambling is wrong, and he wants to enforce Georgia law.

These reasons suffice in state court, but they do not come close to meeting Article III standing requirements in federal court. In recent years, the United States Supreme Court has emphasized that standing requires more than a statutory cause of action. The plaintiff must suffer a concrete injury that sets him apart from the general public, the defendant must have caused that injury, and the court must be able to redress it. Mr. Thomason did not use Underdog Fantasy. This lawsuit upholds an important state policy, but it will not redress a concrete injury suffered by Mr. Thomason.

The Court should order Defendant to pay Mr. Thomason's attorney's fees, costs, and expenses because Defendant did not have an objectively reasonable basis for removal. The absence of Article III standing was obvious from the complaint, controlling precedent, and another recent case in which defense counsel participated.

## BACKGROUND

Defendant operates a popular online gaming platform called Underdog Fantasy, available on the Internet and a mobile phone application. Compl. ¶ 1

4920-4104-6035, v. 1

(Dkt. No. 1-1).  At Underdog Fantasy, people play so-called "Pick 'Em" games.  *Id*. ¶ 2.  Defendant projects that an athlete or other contest participant will have certain statistics in an event.  *Id*.  An Underdog Fantasy user picks whether the athlete or other participant will meet the projection or not.  *Id*.  The user stakes real money, which Defendant calls an "entry fee."  *Id*. ¶¶ 22-23.  If the user picks correctly, he wins real money, which he can withdraw or use in subsequent bets.  *Id*. ¶¶ 2, 24, 26.

Regulators in several states have told Defendant to stop offering Pick 'Em games because they are illegal gambling.  *Id*. ¶ 31; *see id*. ¶¶ 32-36 (describing cease and desists letters in Wyoming, Florida, Massachusetts, and Arkansas and a fine in Maine).

By statute, Georgia allows anyone to recover gambling losses if the gambler does not file his own suit:

> Money paid or property delivered upon a gambling consideration may be recovered from the winner by the loser by institution of an action for the same within six months after the loss and, after the expiration of that time, by institution of an action by any person, at any time within four years, for the joint use of himself and the educational fund of the county.

O.C.G.A. § 13-8-3(b).

Mr. Thomason filed this action against Defendant in the Superior Court of Fulton County, Georgia.  Mr. Thomason has never used Underdog Fantasy.  Compl. ¶ 8.  He views Defendant's business as gambling and opposes it on moral

and social grounds.  *Id*.  Pursuant to O.C.G.A. § 13-8-3(b), he seeks to recover Georgia gamblers' losses at Underdog Fantasy for the joint use of himself and the educational fund of the county.  *Id*. ¶¶ 8, 52.

Defendant removed the case, asserting federal subject matter jurisdiction under the diversity statute, 28 U.S.C. § 1332(a).  Def.'s Not. of Removal ¶¶ 10, 29 (Dkt. No. 1).  The notice of removal did not address Mr. Thomason's standing.

## ARGUMENT

## I.    THE COURT MUST REMAND IF DEFENDANT DOES NOT SHOW THAT MR. THOMASON HAS STANDING

No court can act without jurisdiction, and the rules governing removal and remand reflect this.  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

One aspect of federal subject matter jurisdiction is Article III standing. *Ladies Mem'l Ass'n, Inc. v. City of Pensacola*, 34 F.4th 988, 994 (11th Cir. 2022). Therefore, "[w]hen a case is removed from state to federal court and the plaintiffs do not have Article III standing in federal court, the district court's only option is to remand back to state court." *Id*.

The defendant removing a case has the burden of establishing subject matter jurisdiction and the plaintiff's standing, in particular.  *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021).  The court should resolve all doubts about

4

jurisdiction in favor of remand.  *Id*. at 1359.

## II.  MR. THOMASON DOES NOT HAVE ARTICLE III STANDING, WHICH DEPRIVES THE COURT OF JURISDICTION

### A.  A Plaintiff Without His Own Concrete Injury Does Not Have Standing in Federal Court

In cases "where the plaintiff alleges no harm besides the violation of a statute, the Supreme Court has cut a straightforward path." *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1239 (11th Cir. 2022) (en banc). A statutory violation, in and of itself, does not establish the concrete injury necessary for standing.  *Id*.

Article III requires a plaintiff to have (1) an injury in fact (2) that is fairly traceable to the defendant's challenged conduct and (3) that is likely to be redressed by a favorable judicial decision.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

The injury in fact requirement is "foremost."  *Id*.  It has two separate components.  For one, an injury in fact must be particularized, meaning it must affect the plaintiff in a personal way that distinguishes him from the general public. *Id*. at 339.  Also, an injury in fact must be concrete.  *Id*.  A concrete injury is real, not abstract.  *Id*. at 340.

Crucially, the fact that a statute authorizes somebody to sue does not endow that person with Article III standing.  *Id*. at 341.  A "bare procedural violation,

5

divorced from any concrete harm," will not support a federal lawsuit. *Id*. In *Spokeo*, the plaintiff alleged that a consumer reporting agency distributed false information about him. *Id*. at 335-36. He sued under the Fair Credit Reporting Act, which offered actual damages or statutory damages between $100 and $1,000 per violation. *Id*. at 335. Despite the availability of minimum statutory damages, the plaintiff had to show more than a statutory violation to have standing. *Id*. at 342. Some procedural errors or inaccuracies might not cause any real-world problem. *Id*. The Supreme Court remanded for the Ninth Circuit to evaluate whether the plaintiff suffered concrete harm. *Id*. at 342-43.

The Supreme Court confirmed that statutes do not create standing in *Thole v. U. S. Bank N.A.*, 590 U.S. 538 (2020). Participants in a defined benefit pension plan sued the fiduciaries for mismanagement. *Id*. at 540-41. The Employee Retirement Income Security Act generally allowed participants to sue for restoration of plan losses and other equitable relief. *Id*. at 544. "But the cause of action does not affect the Article III standing analysis." *Id*. The plaintiffs did not have a concrete injury because they had received all the monthly pension benefits owed to them so far and were entitled to keep receiving those benefits for the rest of their lives. *Id*. at 547.

Finally, in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), the Supreme Court returned to the Fair Credit Reporting Act and denied standing to claimants

6

without an injury.  The plaintiffs contended that a credit reporting agency violated the FCRA by not following reasonable procedures to ensure the accuracy of credit files and by not providing consumers with their complete credit files and a summary of their rights.  *Id*. at 430.  With respect to the first claim, the Supreme Court assumed that the defendant violated the FCRA.  *Id*. at 431-32.  Even so, only some of the absent class members suffered concrete harm because their inaccurate reports were disseminated to third parties.  *Id*. at 432.  A far greater number of class members did not suffer concrete harm because the defendant just maintained their files internally.  *Id*. at 433-39.  With respect to the other claims, no class member besides a named plaintiff suffered concrete harm because the formatting problems with the defendant's mailings did not confuse or distress them.  *Id*. at 439-42.

*Spokeo*, *Thole*, and *TransUnion* all highlight the "important difference" between having a statutory cause of action and suffering concrete harm.  *See id*. at 426-27.  "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."  *Id*. at 427.

### B.    Mr. Thomason Lacks the Concrete Injury Necessary for Standing in Federal Court

Mr. Thomason is suing to vindicate his personal beliefs and enforce antigambling laws.  The Georgia General Assembly empowered him to do so in

state court, but Article III bars the entrance to federal court.

Mr. Thomason has not suffered tangible harm from Defendant's conduct. The normal kinds of tangible harm are physical or monetary, and they qualify as concrete under Article III. *TransUnion*, 594 U.S. at 425. The Court can rule these out because Mr. Thomason did not use Underdog Fantasy or lose any money there. *See* Compl. ¶ 8.

Mr. Thomason has not suffered intangible harm, either. Intangible harms include damage to reputation, disclosure of private information, intrusion upon seclusion, and abridgement of free speech or free exercise of religion. *TransUnion*, 594 U.S. at 425. These theories of injury have a long history in American common law or the Constitution itself. *Id*. The present case does not involve any such thing.

Mr. Thomason disclosed his motivation for suing. He opposes gambling for moral and social reasons. Compl. ¶ 8. These values are profoundly important to Mr. Thomason and many others in Georgia, as reflected in state law, but they do not satisfy Article III. The injury in fact requirement screens out plaintiffs with only legal, moral, ideological, or policy objections. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024).

To be sure, Mr. Thomason will recover money for his own use if he prevails. But that money will not compensate him for an injury in fact. An interest in

benefits that flow from a successful lawsuit, such as the bounty paid to a qui tam relator, do not give rise to an injury in fact. *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772-73 (2000). The plaintiff in *Spokeo* stood to recover statutory damages of $100 to $1,000 per violation. *See* 578 U.S. at 335. That was not enough. He needed to show a concrete harm. *Id*. at 342-43.

Mr. Thomason also litigates for the benefit of a third party (the county educational fund), but that does not make a difference. When a litigant asserts someone else's interests, the litigant himself must have a concrete injury in fact. *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013). The Supreme Court thus rejected the idea "that mere authorization to represent a third party's interests is sufficient to confer Article III standing on private parties with no injury of their own." *See id*. at 710.

One could liken this to a private attorney general action, where the government relies on private litigants to help enforce regulations. That does nothing to improve Mr. Thomason's standing, though. *See Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 678 (9th Cir. 2021) (holding that plaintiff who did not suffer meal break violation lacked standing to collect penalties under California's Private Attorneys General Act for other employees who did suffer such violations); *Cooper v. Atl. Credit & Fin. Inc*, 822 F. App'x 951, 955-56 (11th Cir. 2020) (per curiam) (refuting the idea that private attorney general statutes require a lesser

9

showing of Article III injury). The desire to enforce compliance with regulatory law does not provide grounds for standing. *TransUnion*, 594 U.S. at 427-28.

Another district court remanded a gambling case similar to this one, due to lack of Article III standing. In *Braden v. ARB Gaming LLC*, No. 3:24-CV-00762, 2024 WL 4648002, at *1 (M.D. Tenn. Oct. 31, 2024), the plaintiff sued an online casino operator to recover gambling losses, and the defendant removed the case to federal court. The plaintiff had never personally played games or made purchases at the casino. *Id*. However, a state statute allowed "[a]ny other person" besides a gambler to recover losses for the benefit of the gambler's family. Tenn. Code Ann. § 29-19-105. "Supreme Court precedent makes clear that a statutory basis for suit does not confer standing where there is no injury in fact that is fairly traceable to Defendant's challenged conduct." *Braden*, 2024 WL 4648002, at *2 (citing *Spokeo*, 578 U.S. at 341). The plaintiff lacked Article III standing because the online casino did not cause him concrete harm. *Id*. at *3. That resulted in the case being remanded. *Id*. at *4.

Likewise, Defendant in this case cannot carry its burden to show that Mr. Thomason has standing. "No concrete harm, no standing." *TransUnion*, 594 U.S. at 442.

### C.    Mr. Thomason Does Not Meet the Other Standing Requirements

Because Mr. Thomason does not have a concrete injury, the rest of the standing dominoes fall in the same direction.  A non-existent injury cannot be particularized to him, fairly traceable to Defendant's conduct, or redressable by the Court.  *See Spokeo*, 578 U.S. at 338-39.  Each one of these problems deprives the Court of subject matter jurisdiction.  Defendant would need to overcome all of them to stay in federal court.  It cannot do so.[1]

## III.    THE COURT SHOULD REQUIRE DEFENDANT TO PAY MR. THOMASON'S LITIGATION COSTS

Removing a case without cause delays the resolution, increases the parties' costs, and wastes judicial resources.  *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 140 (2005).  Therefore, a remand order may require the defendant to pay just costs and actual expenses, including attorney's fees, incurred as a result of the removal.  28 U.S.C. § 1447(c).  The statute allows district courts, in their discretion, to award fees where the removing party did not have an objectively reasonable basis for seeking removal.  *Boakye v. NCL (Bahamas) Ltd.*, 295 F. Supp. 3d 1342, 1348

---

[1] Of course, lack of standing in federal court does not prevent Mr. Thomason from suing in state court.  Article III standing requirements do not bind state courts. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989).  "[C]areful attention to the legal context of the Georgia Constitution's grant of the 'judicial power' to our courts yields a doctrine of constitutional standing that is materially different from federal standing doctrine." *Wasserman v. Franklin Cnty.*, No. S23G1029, ___ S.E.2d ___, 2025 WL 309390, at *3 (Ga. Jan. 28, 2025).

4920-4104-6035, v. 1

(N.D. Ga. 2018) (citing *Martin*, 546 U.S. at 140). An award does not require

finding that the defendant acted in bad faith. *Coker v. DaimlerChrysler Corp.*, 220

F. Supp. 2d 1367, 1372 (N.D. Ga. 2002).

Four factors make Defendant's decision to remove objectively unreasonable.

First, Mr. Thomason directly alleged that he "has not registered at Underdog

Fantasy or used Underdog Fantasy." Compl. ¶ 8. Defendant could verify that fact

from its own records. Knowing that Mr. Thomason did not personally use the

platform, Defendant also knew that he did not sustain a concrete injury.

Second, federal precedent leaves no room for confusion: A statute cannot

confer Article III standing to a plaintiff without a concrete injury. The Supreme

Court made that crystal clear in *Spokeo*, *Thole*, and *TransUnion*, decided between

2016 and 2021. In 2022, the Eleventh Circuit, sitting en banc, said this was "a

straightforward path," *Hunstein*, 48 F.4th at 1239, whose application was "an

exercise in simplicity," *id*. at 1245.

Third, the law firm representing Underdog also represented the defendant in

*Braden v. ARB Gaming LLC*, where the district court remanded the same type of

case for lack of standing. *See generally* 2024 WL 4648002. One of Underdog's

attorneys was counsel of record in *Braden*. The remand order in *Braden* came out

three months ago, so the Article III problem would have been apparent to

Underdog when it removed this case.

12

Fourth, Underdog's notice of removal does not even mention standing. If Underdog had a reasonable argument for getting around *Spokeo* and its progeny, one would expect that to appear in the notice of removal.

Incentives exist to remove a case, despite the plaintiff's lack of federal standing. For example, the defendant might see an advantage in causing delay or raising litigation costs for the plaintiff. Zachary D. Clopton & Alexandra D. Lahav, *Fraudulent Removal*, 135 Harv. L. Rev. F. 87, 95 (2021). "Plaintiffs turning to state court following *Spokeo* and *TransUnion* thus might be targets for fraudulent removals." *Id*. at 94. As defined by the authors of the article, "fraudulent removals" include those with no basis in law. *Id*. at 92. When federal courts see a removal like that, they should remand the case and freely award attorney's fees under 28 U.S.C. § 1447(c). *Id*. at 103.

Federal courts have, in fact, awarded fees for improper removal where the plaintiff clearly did not have Article III standing. *See*, *e.g.*, *Castillo v. Hain Celestial Grp., Inc.*, No. 24-CV-03898-VC, 2024 WL 4293915, at *1 (N.D. Cal. Sept. 25, 2024) (where plaintiff sought injunctive relief but alleged in her complaint that she did not intend to purchase products again); *O'Boyle v. Unifin, Inc.*, No. 23-CV-870-PP, 2023 WL 6579205, at *6-7 (E.D. Wis. Oct. 10, 2023) (where cases already held that a violation of Fair Debt Collection Practices Act does not necessarily cause an injury in fact); *Doe by & through Doe v. Apple*

13

*Inc.*, No. 3:22-CV-2575-NJR, 2023 WL 3301795, at *6-7 (S.D. Ill. May 8, 2023)

(where plaintiffs alleged a violation of Illinois' Biometric Information Privacy Act

but not a disclosure of their own biometric information).

Mr. Thomason respectfully submits that Defendant should pay his attorney's

fees, costs, and expenses in federal court. The award would not punish Underdog

but would compensate Mr. Thomason for needless litigation. *See Coker*, 220 F.

Supp. 2d at 1372. Defendant knew or should have known that removal was

improper. Requiring Defendant to bear the cost of the proceedings is only just.

If the Court grants this request, Mr. Thomason will provide detailed

information on his litigation costs for the Court to review. Counsel may still need

to file a reply brief or perform other work.

## CONCLUSION

For the foregoing reasons, the Court should remand this case to the Superior

Court of Fulton County, Georgia, and award Mr. Thomason attorney's fees, costs,

and expenses.

Respectfully submitted,

/s/ Benjamin A. Gastel
Benjamin A. Gastel
(GA Bar # 432776)
HERZFELD, SUETHOLZ, GASTEL,
    LENISKI, and WALL PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 300

14

Nashville, TN 37203
Telephone: (615) 800-6225
Facsimile: (615) 994-8625
ben@hsglawgroup.com

*Counsel for Plaintiff*

4920-4104-6035, v. 1

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief was prepared with 14-point Times New

Roman, in compliance with Local Rule 5.1(C).

/s/ Benjamin A. Gastel
Benjamin A. Gastel

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 29, 2025, the foregoing

was served via the Court's electronic filing system upon:

Terry R. Weiss
Stefanie Wayco
Zachary J. McCormack
DUANE MORRIS LLP
1075 Peachtree Street, N.E., Suite 1700
Atlanta, GA 30309
trweiss@duanemorris.com
smwayco@duanemorris.com
zmccormack@duanemorris.com

William M. Gantz
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110
bgantz@duanemorris.com

*Counsel for Defendant*

/s/ Benjamin A. Gastel
Benjamin A. Gastel

16